# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARY W., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    1:23CV128 |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant.[1] | ) |

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Mary W., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 2 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 8 (Plaintiff's Brief); Docket Entry 13 (Commissioner's Brief)). For

---

[1] On December 20, 2023, President Joseph R. Biden, Jr., appointed Martin J. O'Malley as Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should substitute for Kilolo Kijakazi as Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 269-78), alleging a disability onset date of March 19, 2019 (see Tr. 269, 272). Upon denial of that application initially (Tr. 92-105, 125-33) and on reconsideration (Tr. 106-20, 135-42), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 143-44). Following her request for a hearing, Plaintiff submitted an application for SSI (Tr. 287-93), also alleging disability beginning on March 19, 2019 (see Tr. 287).[3] Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 35-91.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 9-34.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 262-68), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

---

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings therein." (Docket Entry 9 at 1.)

[3] Notwithstanding Plaintiff's alleged onset date of March 19, 2019, Plaintiff lacked eligibility for SSI benefits until her application date of November 24, 2020 (see Tr. 287). See 20 C.F.R. § 416.202 (explaining that a claimant remains ineligible for SSI benefits until date he or she files SSI application); 20 C.F.R. § 416.501 (stating that a claimant may not receive SSI benefits for any period that predates first month he or she satisfies eligibility requirements, which cannot precede application date).

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] met the insured status requirements of the . . . Act through June 30, 2020.

2. [Plaintiff] has not engaged in substantial gainful activity since March 19, 2019, the alleged onset date.

3. [Plaintiff] has the following severe impairments: degenerative disc disease; obesity; irritable bowel syndrome [("IBS")]; depression; bipolar disorder; and anxiety.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . in that she is limited to lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; sitting for six hours in an eight-hour workday; standing/walking for six hours in an eight-hour workday; occasional climbing of ladders, ropes, and scaffolds; frequent climbing of ramps and stairs; and occasional stooping, kneeling, crouching, and crawling. Mentally, [s]he is limited to understanding, remembering, and carrying out simple instructions and sustaining concentration, attention, and pace well enough to carry out those simple instructions for two-hour intervals over the course of an eight-hour workday and throughout a forty-hour work week or its equivalent. She is limited to working in proximity to, but not in coordination with, coworkers and supervisors, but she would still be able to interact with others sufficiently to complete a thirty-day training period. She is limited to working in a low stress setting, which is specifically defined to mean no paced production, such as on an assembly line where the worker does not control the pace of production. She is limited to only simple work-related decisions and few or no changes in the work setting or routine. She should have

3

no dealing with crisis situations as an essential function of the job. She can have only superficial contact with the public where "superficial" is defined to mean that contact is incidental and not an essential function of the job.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from March 19, 2019, through the date of this decision.

(Tr. 14-29 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

4

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is

5

disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These

_____

[4] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

7

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[6] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[7]

_____

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the

8

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to account for the vocationally limiting effects of Plaintiff's IBS in the RFC" (Docket Entry 8 at 5 (bold font and block formatting omitted)); and

2) "[t]he ALJ erred in her evaluation of the limiting effects of Plaintiff's psychological disorders on her ability to work" (id. at 10 (bold font and block formatting omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 4-23.)

## 1. Limiting Effects of IBS

In Plaintiff's first issue on review, she maintains that "[t]he ALJ erred by failing to account for the vocationally limiting effects of Plaintiff's IBS in the RFC." (Docket Entry 8 at 5 (bold font and block formatting omitted).) More specifically, Plaintiff contends that, despite the ALJ's finding that Plaintiff's IBS qualified as a severe impairment at step two of the SEP (id. (referencing Tr. 14-15)), "the ALJ did not include any limitation [in the RFC] to account for the diarrhea and need to have frequent access to the restroom that [Plaintiff] indicated was the primary limitation from her IBS," and "made no findings regarding [the] frequency of the bathroom breaks or the off-task time necessary to

_____

process, review does not proceed to the next step.").

accommodate those breaks, other than to say this limitation did not result in the frequency alleged" (id. (citing Tr. 25)).  According to Plaintiff, "[w]hen an ALJ finds that a claimant suffers with an impairment that could require her to have ready access to a bathroom, the ALJ should make *specific* findings concerning the frequency and duration of Plaintiff's bathroom usage."  (Id. at 8 (emphasis in original) (citing Taylor v. Astrue, No. 7:11CV162, 2012 WL 3637254, at *11 (E.D.N.C. Aug. 1, 2012) (unpublished) (in turn citing Davis v. Commissioner of Soc. Sec., No. 2:10CV30, 2011 WL 442118, *1 (N.D.W. Va. February 2, 2011) (unpublished))); see also id. at 8-9 (additionally citing Dowling v. Commissioner of Soc. Sec., 986 F.3d 377, 389 (4th Cir. 2021), Summey v. Berryhill, No. 1:16CV1185, 2018 WL 708355, at *3-4 (M.D.N.C. Feb. 5, 2018) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Feb. 22, 2018) (Biggs, J.), Anders v. Colvin, No. 1:13CV284, 2015 WL 4656291, at *4-5 (W.D.N.C. Aug. 6, 2015) (unpublished), and Binder v. Colvin, No. 5:12CV271, 2013 WL 1686306, at *3 (E.D.N.C. Mar. 21, 2013) (unpublished), recommendation adopted, 2013 WL 1694678 (E.D.N.C. Apr. 18, 2013) (unpublished)).)  Plaintiff further faults the ALJ for failing to "account for [] fluctuation[s]" in Plaintiff's IBS symptoms (id. at 9 (citing Rogers v. Kijakazi, 62 F.4th 872, 880-81 (4th Cir. 2023))), arguing that, "even if [Plaintiff]'s condition improved on occasion to where she would not require additional breaks, the ALJ should have still explained how [Plaintiff] could perform the

functions of the RFC during her flare-ups and periods of symptom intensification, requiring more bathroom breaks" (id. at 10). Plaintiff notes that "the symptoms [Plaintiff] is experiencing from her IBS would be disabling," because "[t]he VE stated that just going to the bathroom more than once or twice for 3-5 minutes at a time outside of normal breaks would be work preclusive." (Id. at 6 (citing Tr. 87-88).) For the reasons explained in more detail below, Plaintiff's contentions lack merit.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c). An ALJ need not discuss every piece of evidence in making an RFC determination, see Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014); however, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge

11

from that evidence to [that] conclusion," <u>Woods v. Berryhill</u>, 888
F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks,
and brackets omitted). Here, no basis for remand exists, because
the ALJ's decision supplies the necessary "accurate and logical
bridge," <u>Woods</u>, 888 F.3d at 694 (internal quotation marks omitted),
between the evidence and her findings that Plaintiff's IBS (A)
qualified as a severe impairment at step two of the SEP (<u>see</u> Tr.
15), but (B) "d[id] not warrant more restrictive limitations than
those reflected in the [ RFC]" (Tr. 25).

To begin, Plaintiff's assertion that, "[w]hen an ALJ finds
that a claimant suffers with an impairment that <u>could</u> require her
to have ready access to a bathroom, the ALJ should make ***specific***
findings concerning the frequency and duration of Plaintiff's
bathroom usage" (Docket Entry 8 at 8 (underscoring added) (italics
and bolding in original)) misses the mark. Notably, in so arguing,
Plaintiff alters the language in <u>Binder</u> that, "[w]hen an ALJ finds
that a claimant has an impairment that <u>requires</u> him to have access
to a bathroom, the ALJ should make specific findings concerning the
frequency and duration of Plaintiff's bathroom usage," <u>Binder</u>, 2013
WL 1686306, at *3, by inserting the word "could" in front of the
word "require." Indeed, in the <u>Summey</u>, <u>Binder</u>, <u>Taylor</u>, and <u>Davis</u>
cases relied on by Plaintiff, the ALJs had all found that the
claimant <u>required</u> access to the bathroom in the RFC determination,
but then failed to make any finding as to how frequently and for

how long the claimant would need bathroom breaks.  See Summey, 2018
WL 708355, at *3-4 ("[T]he ALJ assessed [the p]laintiff's RFC and
determined that she . . . must have access to bathroom facilities
on an 'as needed' basis.  Based on th[at] determination, the ALJ
found under step four of the [SEP] that [the p]laintiff could
return to her past relevant work ("PRW") as an office manager[,
because] . . . she would have access to bathroom facilities, as
needed. . . .  Nevertheless, the ALJ made no findings regarding the
extent to which [the p]laintiff required unscheduled bathroom
breaks, and . . . fail[ed] to cite any basis for his conclusion
that [the p]laintiff's need for unrestricted bathroom breaks would
not impact [her] ability to perform her [PRW, and] . . .  [t]he
record contain[ed] no [VE] testimony or other evidence on which the
ALJ relie[d] to support th[e step four] determination." (emphasis
added) (internal parenthetical citations and some internal
quotation marks omitted)); Binder, 2013 WL 1686306, at *3 ("In
assessing [the p]laintiff's RFC, the ALJ determined that [the
p]laintiff required access to the bathroom/toilet facilities in the
work environment.  When an ALJ finds that a claimant has an
impairment that requires him to have access to a bathroom, the ALJ
should make specific findings concerning the frequency and duration
of [the p]laintiff's bathroom usage.  Because the ALJ did not do so
here, the [court] cannot determine whether the ALJ's findings —
particularly his step five finding — were supported by substantial

evidence." (emphasis added) (internal citations and quotation marks omitted)); <u>Taylor</u>, 2012 WL 3637254, at *11 ("[T]he ALJ found [the plaintiff] capable of performing her [PRW] as a receptionist as actually and generally performed based upon the testimony of the [VE], who testified that a receptionist position would allow for . . . <u>ready access to a bathroom at will</u>. However, the ALJ . . . failed to address the VE's testimony that a person needing to take an excessive number of unscheduled bathroom breaks has the potential to be problematic. Given the ALJ made no findings regarding to what extent [the plaintiff] required unscheduled bathroom breaks, nor question[ed] the VE as to his definition of excessive, there is simply no way to conclude . . . that the ALJ's step-four finding is supported by substantial evidence." (emphasis added) (internal parenthetical citations, internal quotation marks, and brackets omitted)); <u>Davis</u>, 2011 WL 442118, at *1 ("[T]he ALJ [] include[d] in the plaintiff's [RFC] a required accommodation of placing the plaintiff close to the bathroom. Therefore, . . . this [c]ourt finds that more specific findings regarding the frequency and duration of [the] plaintiff's need for the bathroom during the relevant time frame must necessarily also be included." (emphasis added)).

Here, by contrast, the ALJ did <u>not</u> include ready access to a bathroom or a need for extra breaks in the RFC (<u>see</u> Tr. 17), and specifically found that Plaintiff's "abdominal complaints ha[d]

been taken into consideration in restricting her postural activities, but . . . that [such complaints] d[id] not warrant more restrictive limitations than those reflected in the [RFC]" (Tr. 25). Under such circumstances, the Court finds <u>Summey</u>, <u>Binder</u>, <u>Taylor</u>, and <u>Davis</u> inapposite to the case at bar.

Similarly, the facts in <u>Anders</u> also distinguish that decision from the instant case. In <u>Anders</u>, despite significant record evidence of the intensity, persistence, and limiting effects of the plaintiff's "esophagitis, gastritis, duodenitis, and Mallory-Weiss tears in the lining of his esophagus," <u>Anders</u>, 2015 WL 4656291, at *1 (footnote omitted); <u>see also</u> <u>id.</u> at *5 ("[The plaintiff] testified graphically about how his [gastrointestinal ('GI')] disorders affect his daily life when he is having an episode. Moreover, the record clearly indicates [the plaintiff] has been hospitalized fairly frequently due to his GI disorders and has documentation from several physicians to demonstrate the significance of his problem."), the ALJ did not find that any of those impairments qualified as severe and failed to discuss the impact of those impairments on the plaintiff's RFC <u>at all</u> in the decision, <u>see</u> <u>id.</u> ("Despite [the plaintiff's] testimony and medical records, [his] GI problems and any consideration of their erosion of [his] RFC were erroneously absent from the ALJ's RFC determination and they must be addressed on remand."). In comparison, the ALJ here found Plaintiff's IBS severe (<u>see</u> Tr. 15),

discussed Plaintiff's testimony (see Tr. 18) and the IBS-related medical evidence (see Tr. 24), and explained the ALJ's reasoning for not including greater restrictions in the RFC arising out of Plaintiff's IBS symptoms (see Tr. 25, 27).

Likewise, in Dowling, the United States Court of Appeals for the Fourth Circuit held that the ALJ erred by "fail[ing] to analyze whether [the plaintiff]'s RFC was impacted by her need to work near a restroom and take frequent bathroom breaks," because "considerable evidence [existed] in the record demonstrating that [the plaintiff] regularly experienced diarrhea and incontinence, as well as drainage from her anal fissure[,] . . . requir[ing] bathroom breaks at a frequent, and often unpredictable, rate." Dowling, 986 F.3d at 389. The Dowling court faulted the ALJ for "simply not[ing] that [the plaintiff] accommodate[d] her drainage and accidents by using pads," because "[t]hat finding misse[d] the point[, as p]ads m[ight have] ke[pt the plaintiff]'s clothes clean and help[ed] reduce the potential for embarrassing accidents[, but] they d[id] not save [the plaintiff] any trips to the bathroom, since the pads need[ed] to be changed once they [we]re soiled." Id. (internal quotation marks and internal citations omitted). Unlike in Dowling, the ALJ here did not erroneously find that Plaintiff's use of pads (or other protective measures) obviated her need for bathroom breaks; rather, the ALJ found that the record did not support the Plaintiff's subjective statements regarding the

16

intensity, persistence, and limiting effects of her IBS symptoms. (See Tr. 25.)[8] Moreover, as explained in more detail below, the ALJ supported that determination with substantial evidence.

First, the ALJ's evaluation of Plaintiff's subjective symptom reporting helps to explain the ALJ's omission of more restrictive RFC limitations to account for Plaintiff's IBS symptoms. In that regard, the ALJ acknowledged Plaintiff's testimony regarding her IBS symptoms as follows:

> [Plaintiff] testified that she [] has [IBS] and that it [] had been particularly bad for the past couple of years. She stated that she has issues with diarrhea and that she has to use the bathroom eight to ten times a day for ten to twenty-five minutes each time. She stated that she continues to have diarrhea despite use of medication and dietary changes. [She] testified that she has had bowel accidents but that she has not had an[y] emergency room visits for her [IBS] since 2019.

(Tr. 18 (referencing Tr. 57-60, 67-68, 76-78).) The ALJ thereafter found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of [her] alleged symptoms,"

---

[8] Plaintiff's reliance on Rogers fares no better. (See Docket Entry 8 at 9-10 (citing Rogers, 62 F.4th at 880-81).) In that case, the Fourth Circuit noted that the plaintiff, who alleged disabling post-traumatic stress disorder ("PTSD"), "presented evidence to the ALJ that her abilities fluctuate[d] during her menstrual cycle, such that her functioning [wa]s drastically worse during menstruation, as it remind[ed] her of being raped during her time in the Army." Rogers, 62 F.4th at 880 (internal quotation marks and some brackets omitted). The Fourth Circuit found "[s]triking[]" that the ALJ's decision omitted any mention of the menstrual cycle evidence," meaning that "the ALJ either wholly ignored the menstrual cycle evidence, or the ALJ considered and discounted that evidence for reasons that were not explained." Id. at 881. Here, although Plaintiff testified that her IBS medication worked better on some days than others and that the number of times she used the bathroom per day varied (see Tr. 58), she did not describe "flare-ups" or cyclical periods when her symptoms increased drastically like the plaintiff in Rogers. Moreover, unlike the ALJ in Rogers, the ALJ here expressly acknowledged Plaintiff's varying reports of the frequency of her daily bathroom visits but found that the record did not support those reports (see Tr. 25).

but that her "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision." (Tr. 19.) The ALJ supported that finding with the following analysis:

> As for [Plaintiff's IBS], she did not allege this impairment when she initially applied [for benefits (Tr. 306)]. While there were a few instances after the alleged onset date where [she] reported relatively frequent diarrhea, for the most part her symptoms have been managed and have not resulted in the frequency alleged. At the hearing, [she] testified that she has to use the bathroom eight to ten times a day for ten to twenty-five minutes each time. However, in July 2021 she reported having to run to the bathroom only after every meal, which is much less often than the five to eight times a day she reported to a treatment provider on one occasion or the eight to ten times a day she testified to at the hearing. [She] was recently seen by a gastroenterologist in October 2021 and prescribed a medication, but in December 2021 it was noted that [Plaintiff] had not gotten the prescription filled. There is no evidence of any follow-up gastroenterology treatment, which suggests the symptoms were better managed.

(Tr. 25.) That analysis cites to substantial evidence in support of the ALJ's finding regarding the intensity, persistence, and limiting effects of Plaintiff's IBS symptoms, and Plaintiff did not specifically challenge that analysis by the ALJ (see Docket Entry 8).

The ALJ's analysis of the opinion evidence also elucidates her decision not to include greater limitations in the RFC arising out of Plaintiff's IBS. The ALJ found the opinion of the state agency medical consultant at the reconsideration level of review that

18

Plaintiff could perform a limited range of light work (without a specific accommodation for bathroom breaks) (see Tr. 113-14) "more persuasive" than the initial-level consultant's opinion (Tr. 25), because that consultant believed Plaintiff could perform medium-exertion work (but also without a limitation for restroom access) (see Tr. 98-99).  The ALJ additionally found the opinion of Licensed Professional Counselor Craig Michael Peters ("LPC Peters") that Plaintiff would need hourly unscheduled breaks of 10 to 15 minutes each due to her IBS symptoms (see Tr. 1038) "unpersuasive," as "outside the purview of his area of expertise as a mental health counselor," as "largely based on [Plaintiff]'s reports[,] and [as] not consistent with her reports to the providers who treated her for [IBS] or with the treatment sought and provided for that impairment" (Tr. 27).  Notably, Plaintiff did not contest the ALJ's assessment of that opinion evidence.  (See Docket Entry 8.)

Moreover, by pointing to record evidence Plaintiff believes supported greater limitations in the RFC arising out of her IBS symptoms (see Docket Entry 8 at 5-7 (citing Tr. 57-59, 67, 78, 373, 376, 393, 580, 419, 471, 475, 511, 520, 634-44, 655, 676, 722, 726, 739, 741, 744, 794, 847, 870, 998, 1000, 1038)), she misinterprets this Court's standard of review.  The Court must determine whether substantial evidence, i.e., "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), supported the

19

ALJ's finding that postural limitations in the RFC adequately accommodated Plaintiff's IBS symptoms (see Tr. 25), and not whether other record evidence weighed against that finding, see Lanier v. Colvin, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

The ALJ's decision thus provides a "logical bridge," Woods, 888 F.3d at 694, connecting the evidence to her conclusion that postural restrictions in the RFC adequately accommodated Plaintiff's IBS, and Plaintiff has not shown a basis for remand. Patricia K. v. Saul, No. 5:18CV134, 2020 WL 3108712, at *10 (W.D. Va. Feb. 28, 2020) (unpublished) ("[The plaintiff] argues that the ALJ . . . should have included [in the hypothetical question to the VE] the limitation[] . . . that [the plaintiff] would need ten to twelve unscheduled bathroom breaks per day.  The VE testified that [] four to six extra bathroom breaks would . . . preclude competitive employment. . . . [H]owever, [the] ALJ [] offered good reasons to question [the plaintiff]'s reports about the number of bathroom breaks she would need during the day, and to conclude that, despite her severe IBS or Crohn's disease, she could make it through an eight-hour workday with normal breaks.  Thus, the ALJ was not required to include additional bathroom breaks in his RFC

20

finding, or to ask the VE about job prospects for a person with such extreme limitations." (internal citations omitted)).

In light of the foregoing analysis, Plaintiff's first issue on review fails as a matter of law.

## 2. Evaluation of Mental Impairments

Lastly, Plaintiff maintains that "[t]he ALJ erred in her evaluation of the limiting effects of Plaintiff's psychological disorders on her ability to work." (Docket Entry 8 at 10 (bold font and block formatting omitted).) In particular, Plaintiff contends that "[t]he most significant error made by the ALJ in evaluating [Plaintiff]'s psychological conditions is [the ALJ's] reliance on 'normal' objective medical evidence, in this case 'largely unremarkable' mental status examinations ('MSE[s]'), to determine [Plaintiff]'s degree of limitation." (Id. at 11 (internal parenthetical citation omitted) (citing Tr. 26).) Plaintiff points out that the ALJ "justified her conclusions [at steps two and three of the SEP] by noting 'normal' findings, including findings of intact memory and 'consistent findings' of intact concentration and attention" (id. (quoting Tr. 16)), "repeatedly noted normal MSEs throughout her medical summary, referencing 'unremarkable' or 'normal' MSEs . . . at least 13 times" (id. (quoting Tr. 19-22)), and "again fell back on the 'largely unremarkable' MSEs to justify her evaluation of the state agency physician opinions" (id. (quoting Tr. 26)). According to

21

Plaintiff, the Fourth Circuit "determined [that] such normal examination findings do not preclude disabling symptoms from conditions which do not always produce such findings upon examination (in that case, fibromyalgia)" (id. at 12 (citing Arakas v. Commissioner of Soc. Sec. Admin., 983 F.3d 83, 97-98 (4th Cir. 2020))), and then "explicitly extended the *Arakas* reasoning to include psychological disorders, depression in particular" (id. (citing Shelley C. V. Commissioner of Soc. Sec., 61 F.4th 341, 361-62 (4th Cir. 2023))).

Additionally, Plaintiff faults the ALJ for "'cherry pick[ing] facts that support a finding of nondisability while ignoring evidence that points to a disability finding'" (id. (quoting Arakas, 983 F.3d at 98)), "'fail[ing] to appreciate the waxing and waning nature' of [Plaintiff]'s condition[,] and [] not 'consider[ing] the longitudinal record' as a whole" (id. (quoting Arakas, 983 F.3d at 101)), arguing that Plaintiff "never attained the sustained improvement that the ALJ seemed to indicate" (id.). Further, Plaintiff objects to the ALJ's reliance on Plaintiff's activities as "inconsistent with her allegations of intense psychological symptoms" (id. at 18 (citing Tr. 21)), noting that the Fourth Circuit in Shelley C. "faulted the ALJ for not considering [the plaintiff's reported activities] in the broader context of her many treatment notes which still indicated severe

22

symptoms" (id. (citing Shelley C., 61 F.4th at 363)).  Plaintiff's
contentions do not establish a basis for remand.

In Arakas, the Fourth Circuit deemed fibromyalgia a "unique"
disease, Arakas, 983 F.3d at 97, with "symptoms [that] are entirely
subjective," id. at 96, and noted that "physical examinations of
patients with fibromyalgia will usually yield normal results — a
full range of motion, no joint swelling, as well as normal muscle
strength and neurological reactions," id. (brackets omitted).  The
Fourth Circuit thus held that "ALJs may not rely on objective
medical evidence (or the lack thereof) – even as just one of
multiple medical factors – to discount a claimant's subjective
complaints regarding symptoms of fibromyalgia," because
"[o]bjective indicators such as normal clinical and laboratory
results simply have no relevance to the severity, persistence, or
limiting effects of a claimant's fibromyalgia, based on the current
medical understanding of the disease," id. at 97 (emphasis added).

Just over two years later, and after the ALJ's decision in
this case, the Fourth Circuit issued Shelley C., in which the court
extended the above-described holding in Arakas to depression,
reasoning as follows:

> After acknowledging that [the plaintiff]'s medically
> determinable impairment could reasonably be expected to
> cause some of the alleged symptoms, the ALJ determined
> that [the plaintiff]'s statements relating to the
> intensity, persistence, and limiting effect of her
> symptoms were inconsistent with the medical and other
> evidence in the record.  We hold that the ALJ erred in

23

discounting [the plaintiff]'s subjective complaints as inconsistent with the record's medical evidence.

The ALJ's legal error is clear: he could not dismiss [the plaintiff]'s subjective complaints based *entirely* upon the belief that they were not corroborated by the record's medical evidence. The Fourth Circuit has long held that "while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). Indeed, "[b]ecause pain is not readily susceptible of objective proof . . ., the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." *Hines v. Barnhart*, 453 F.3d 559, 564-65 (4th Cir. 2006). Accordingly, [the plaintiff] was entitled to rely entirely on subjective evidence to demonstrate that her pain was sufficiently persistent and severe to support a disability finding. *See id.* at 564. As described in length above, the record contains no shortage of such evidence.

. . .

In *Arakas*, we held that ALJs could not rely upon the absence of objective medical evidence to discredit "a claimant's subjective complaints regarding symptoms of fibromyalgia *or some other disease that does not produce such evidence*." 983 F.3d at 97 (emphasis added). Today, we hold that depression — particularly chronic depression — is one of those other diseases. . . . Stated differently, symptoms of [major depressive disorder ('MDD')], like those of fibromyalgia, are "entirely subjective," determined on a case-by-case basis. *Arakas*, 983 F.3d at 96 (emphasis added). Ultimately, because of the unique and subjective nature of MDD, subjective statements from claimants "should be treated as evidence *substantiating* the claimant's impairment." *Id.* at 97-98.

Because the ALJ "improperly increased [the plaintiff]'s burden of proof," *id.* at 96, in requiring that her subjective statements be validated by objective medical support, we must find error.

<u>Shelley C.</u>, 61 F.4th 341, 360-62 (italics in original) (internal

quotation marks, footnote, and some citations omitted).

A review of the ALJ's decision persuades the Court that the ALJ here did not violate Shelley C., because she did not 1) "dismiss [the plaintiff]'s subjective complaints based *entirely* upon the belief that they were not corroborated by the record's medical evidence," Shelley C., 61 F.4th at 360 (italics in original), 2) "cherry pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding," Arakas, 983 F.3d at 98, or 3) fail to consider Plaintiff's activities "in the broader context of her many treatment notes, which still indicated severe symptoms" (Docket Entry 8 at 18 (citing Shelley C., 61 F.4th at 363)).

a. Reliance on Objective Medical Evidence

Plaintiff contends that the ALJ "justified her conclusions [at steps two and three of the SEP] by noting 'normal' findings, including findings of intact memory and 'consistent findings' of intact concentration and attention" (Docket Entry 8 at 11 (quoting Tr. 16)), "repeatedly noted normal MSEs throughout her medical summary, referencing 'unremarkable' or 'normal' MSEs . . . at least 13 times" (id. (quoting Tr. 19-22)), and "again fell back on the 'largely unremarkable' MSEs to justify her evaluation of the state agency physician opinions" (id. (quoting Tr. 26)). Plaintiff thus argues that the ALJ violated Shelley C. by finding "that [Plaintiff's] persistent report of depressive and anxious

25

symptomatology [wa]s negated by a lack of objective abnormalities on MSEs." (Id. at 12.) That argument falls short for two reasons.

First, to the extent Plaintiff relies on Arakas and Shelley C. to fault the ALJ for considering objective findings on MSEs at steps two and three of the SEP (see id. at 11), that argument overextends the reach of those cases. In each of those cases, the Fourth Circuit held that an ALJ may not, when determining a claimant's RFC, discount a claimant's subjective reports of the intensity, persistence, and limiting effects of his or her fibromyalgia or MDD symptoms entirely on the basis of the absence of substantiating objective medical evidence. See Shelley C., 61 F.4th at 361; Arakas, 983 F.3d at 97. Thus, those cases did not affect the regulatory requirements that a claimant must produce objective medical evidence to establish a medically determinable impairment at step two of the SEP, see 20 C.F.R. §§ 404.1521, 416.921 ("[A claimant's] impairment(s) must result from . . . psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a . . . mental impairment must be established by objective medical evidence from an acceptable medical source. [An ALJ] will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." (emphasis added)), and must demonstrate objective findings satisfying the criteria of an applicable listing at step

26

three of the SEP, 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3)

("Within each listing, [the SSA] specif[ies] the <u>objective medical</u> and other findings needed to satisfy the criteria of that listing." (emphasis added)). The Court accordingly finds no error arising out the ALJ's reliance on unremarkable objective findings in Plaintiff's MSEs as part of the ALJ's analysis at steps two and three of the SEP (<u>see</u> Tr. 14-17).

Second, the ALJ here neither relied "entirely" on the absence of objective medical evidence to discount Plaintiff's depressive symptoms, <u>Shelley C.</u>, 61 F.4th at 360 (emphasis omitted), nor "requir[ed]" that objective medical evidence substantiate those symptoms, <u>id.</u> at 362.[9] Rather, the ALJ found that Plaintiff's

_____

[9] Although Plaintiff has complained of varying depressive symptoms, including mood swings, crying spells, decreased concentration, and low energy/fatigue, at different times during the relevant period in this case (<u>see, e.g.</u>, Tr. 56, 65, 69, 429, 439-40, 446, 463, 479, 503, 542, 555, 567, 662, 664, 669, 672-73, 682, 693, 696, 701, 704, 706, 746, 759, 755, 773-74, 776, 779, 782, 794, 820, 823, 828-29, 837, 840, 885, 923, 934-35, 948, 966, 983, 1009), Plaintiff has also consistently reported <u>psychotic</u> symptoms such as auditory and visual hallucinations (<u>see, e.g.</u>, Tr. 56, 66, 321, 429, 439-40, 446, 463, 479, 542, 567, 603, 693, 696, 701, 715, 720, 746, 752-53, 905, 923, 931, 935, 949, 966, 970, 980-81). The Fourth Circuit in <u>Shelley C.</u> emphasized that portions of the ALJ's decision "provided a prime example of the misconceptions surrounding <u>depression</u>," <u>Shelley C.</u>, 61 F.4th at 367 (emphasis added), noting that individuals with <u>depression</u> can "experienc[e] brief periods of diminished <u>depression</u>, which can appear - from the outside looking in - as overall improvement," <u>id.</u> (emphasis added), and that "[t]he ALJ focused on [the plaintiff]'s 'improved' periods to reject the lower, more frequent states of her <u>depression</u>," <u>id.</u> (emphasis added). The Fourth Circuit announced that it would "join [its] sister circuits' growing conversation surrounding chronic diseases, <u>highlighting, in particular, the unique and subjective nature of chronic depression</u>," <u>id.</u> at 368 (emphasis added). Given the Fourth Circuit's repeated emphasis on the "unique" nature of chronic <u>depression</u>, <u>see id.</u> at 368, and the significant difference between Plaintiff's reported psychotic symptoms of auditory and visual hallucinations, and the primary symptoms of MDD, <u>see</u> <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 160 (Am. Psychiatric Ass'n 5th ed. 2013) ("<u>DSM-V</u>") (listing "[d]epressed mood most of the day, nearly every day" and "[m]arkedly diminished interest or pleasure in all, or almost all, activities most of the day, nearly every day" as primary symptoms), Plaintiff has not shown error under <u>Shelley C.</u> arising out of the ALJ's reliance on the

subjective statements about her symptoms lacked consistency with "the medical evidence and other evidence in the record" (Tr. 19 (emphasis added)), which does not indicate that the ALJ relied "entirely" on objective medical evidence, as "medical evidence" and "other evidence" encompass more than just objective medical evidence. Consistent with that finding, although the ALJ mentioned Plaintiff's "unremarkable" or "normal" objective findings in MSEs multiple times in the ALJ's discussion of the medical evidence (Tr. 19-22),[10] she additionally considered 1) that, despite Plaintiff's complaints of disabling social anxiety, the record contained "numerous instances of [Plaintiff] engaging with others," including "multiple vacations," "a show with her mother-in-law," "dinner with [Plaintiff's] sister, talking daily with friends on the phone,

---

repeated observations of Plaintiff's mental health providers that Plaintiff lacked the appearance of responding to internal stimuli and showed no evidence of psychosis (see Tr. 19-22; see also Tr. 439 (noting that Plaintiff "d[id] not appear to be responding to any internal stimuli" and finding "no evidence of psychosis beyond [Plaintiff's] report"), 606 (noting that Plaintiff "d[id] not appear to be responding to internal stimuli"), and 662-63, 665, 668, 670, 672, 683, 694, 697, 699, 702, 704, 716, 720, 737, 744, 753, 756, 774, 777, 780, 782, 785, 787, 790, 792, 795, 818, 821, 824, 826, 835, 838, 840, 848, 862, 871, 881, 884, 892, 900, 903, 906, 924, 930, 932, 935, 945, 948, 957, 967, 971, 981, 990, 997, 1008, 1023, 1027, and 1036 (findings of LPC Peters on every MSE in the record of "[n]o evidence of auditory/visual hallucinations or delusions")).

[10] Notably, many of the MSEs in the record reflect Plaintiff's self-report of her mood. (See, e.g., Tr. 467, 490, 506 (5/21/19, 7/18/19, 9/4/19 "pretty good"), 482 (6/20/19 "good but up and down"), 573, 690, 892 (3/5/20, 11/17/21, 11/18/20 "better"), 712, 749 (9/22/21, 8/6/21 "depressed"), 831 (2/26/21 "some depression"), 949 (7/17/20 "not good"), 1017 (5/8/20 "up and down").) Shelley C. does not bar the ALJ from considering those subjective components of a mental status examination. See, e.g., Shelby D. v. Kijakazi, No. 3:22CV234, 2023 WL 6444895, at *11 (S.D.W. Va. Sept. 29, 2023) (unpublished) (finding ALJ "properly noted that [the plaintiff]'s own subjective presentation in mental-status examinations was unremarkable" (emphasis in original)).

28

donating platelets, going to thrift stores during big sales, and working a few hours a week for Door Dash" (Tr. 26), 2) Plaintiff's "reported activities, which include[d] being the primary caregiver for her autistic son, doing household chores, driving, shopping, traveling, and working a few hours a week for Door Dash" (id.), 3) Plaintiff's reports to her providers of significant symptom improvement with therapy and medications (see Tr. 19-22), and 4) brief periods of increasing symptoms when Plaintiff discontinued her medication (see Tr. 21 (citing Tr. 949), 22 (citing Tr. 746)).

Shelley C. does not preclude the ALJ from such considerations. As well-explained by another district court in this Circuit:

> Here, the ALJ found [the p]laintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but concluded that [the p]laintiff's statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record. The ALJ here did not base his conclusion on a lack of objective medical evidence. Rather, the ALJ explicitly noted that his step-two conclusion was based on inconsistencies with the medical evidence and other evidence in the record. The ALJ properly weighed [the p]laintiff's subjective complaints against other evidence in the record. For instance, the ALJ compared [the p]laintiff's hearing testimony to her previous statements, including those made during medical visits with her primary care provider and her statements regarding her activities of daily living, including her ability to care for dependent grandchildren and live alone. Such weighing remains permissible under Shelley C. and Arakas.

Lasharne W. v. Commissioner, Soc. Sec. Admin., No. CV 21-2603, 2023 WL 2414497, at *4 (D. Md. Mar. 8, 2023) (unpublished) (internal quotation marks and citations omitted); see also Anthony P. v.

O'Malley, No. 1:22CV291, 2024 WL 965608, at *3 (E.D. Va. Mar. 6, 2024) (unpublished) ("[T]he ALJ in this case did not dismiss [the p]laintiff's subjective complaints based entirely upon the belief that they were not corroborated by the medical evidence; nor did the ALJ require that [the p]laintiff's subjective statements be validated by objective medical support. Rather, in assessing [the p]laintiff's subjective complaints, the ALJ considered [the p]laintiff's ability to complete a myriad of daily activities, [his] own statements about his condition, and [his] treating provider's observations of [the p]laintiff's functioning. Fourth Circuit precedent does not suggest that ALJs should ignore objective evidence such as this; instead, *Shelley C.* and *Arakas* prevent ALJs from requiring claimants to provide medical evidence that would be impossible to produce given their specific medical conditions. The ALJ weighed the [p]laintiff's subjective complaints appropriately under those holdings and did not impose undue demands."); Strader v. O'Malley, No. 5:22CV367, 2024 WL 796523, at *8 (E.D.N.C. Feb. 2, 2024) (unpublished) ("[C]ontradictory medical or other evidence may discredit [the p]laintiff's subjective statements regarding the limiting effects of her pain, [while] a mere absence of medical evidence cannot." (emphasis added) (citing Shelley C., 61 F.4th at 360)), recommendation adopted, 2024 WL 779225 (E.D.N.C. Feb. 26, 2024) (unpublished); Shelby D. v. Kijakazi, No. 3:22CV234, 2023 WL

30

6444895, at *11 (S.D.W. Va. Sept. 29, 2023) (unpublished) ("[A] diagnosis of . . . depression does not render a claimant per se disabled. . . . The ALJ expressly stated that his conclusions were not based exclusively on objective medical findings, but included consideration of the total medical and nonmedical evidence, including testimony and statements by [the plaintiff] and others, a function report, and other record evidence regarding [the plaintiff]'s activities of daily living, behavior and habits. The ALJ supported this assertion by pointing to extensive record evidence of inconsistencies with [the plaintiff]'s allegations regarding the limiting effects of these impairments." (internal quotation marks and parenthetical citation omitted)).

In sum, Plaintiff's contentions do not establish that the ALJ impermissibly <u>required</u> that objective medical evidence substantiate Plaintiff's depression symptoms in violation of <u>Shelley C.</u>

b.  <u>Cherry-Picking</u>

Plaintiff next faults the ALJ for "'cherry pick[ing] facts that support a finding of nondisability while ignoring evidence that points to a disability finding'" (Docket Entry 8 at 17 (quoting <u>Arakas</u>, 983 F.3d at 98)), "'fail[ing] to appreciate the waxing and waning nature' of [Plaintiff]'s condition[,] and [] not 'consider[ing] the longitudinal record' as a whole" (<u>id.</u> (quoting <u>Arakas</u>, 983 F.3d at 101)), arguing that Plaintiff "never attained the sustained improvement that the ALJ seemed to indicate" (<u>id.</u>).

31

Plaintiff, however, does not point the Court to any particular example of "cherry-picking" by the ALJ. (See id.) Furthermore, and contrary to those allegations, the ALJ's decision reveals that she discussed both the favorable and unfavorable aspects of Plaintiff's mental health treatment and did not mischaracterize the record. (See Tr. 19-22.)

Another district court within the Fourth Circuit recently distinguished Shelley C., because the ALJ there (like the ALJ here and unlike the ALJ in Shelley C.) had not cherry-picked the mental health evidence and had properly concluded that the plaintiff's mental symptoms improved over time with treatment:

> This case is [] distinguishable from *Shelley C.*, where the ALJ improperly ignored the waxing and waning nature of depression by citing only to treatment notes where the claimant was stable and by omitting evidence of the claimant's subsequent periods of intense depression symptoms. Here, the ALJ noted that treatment notes indicate [the p]laintiff's condition improved over time. [The p]laintiff argues that because she endorsed symptoms of depression during treatment and because she sometimes needed adjustments to her medications, the ALJ erred in finding her not credible. But the ALJ is permitted to find that a claimant's symptoms do not render her totally disabled despite the fact that her symptoms exist and are limiting to a certain extent.

Lasharne W., 2023 WL 2414497, at *4 (internal quotation marks and citations omitted).

Put simply, Plaintiff has not shown that the ALJ cherry-picked evidence in violation of Shelley C.

32

c. Reliance on Plaintiff's Activities

Finally, Plaintiff objects to the ALJ's reliance on Plaintiff's activities as "inconsistent with her allegations of intense psychological symptoms" (Docket Entry 8 at 18 (citing Tr. 21)), noting that the Fourth Circuit in Shelley C. "faulted the ALJ for not considering [the plaintiff's reported activities] in the broader context of her many treatment notes which still indicated severe symptoms" (id. (citing Shelley C., 61 F.4th at 363)). In Plaintiff's view, "despite a handful of notes demonstrating that [she] was seeking some fulfillment in life despite her disability, she continued to have severe symptoms." (Id. (citing Arakas, 983 F.3d at 101 ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."))).)

Again, however, Plaintiff has not elaborated on how the ALJ's discussion of Plaintiff's activities failed to capture the "broader context." (Id.) Significantly, the record shows that Plaintiff engaged in activities inconsistent with her allegations of disabling mental symptoms throughout the relevant period in this case, such as taking vacations, socializing with friends and family, taking care of her autistic son, driving part-time for Door Dash, and driving her son to school and back 45 minutes each way (see Tr. 47-48, 75, 314, 317, 322, 325, 664, 682, 699, 701, 779, 781, 787, 792, 794, 818, 820, 880, 883, 903, 934, 980, 996, 1007,

33

1029-30), and, thus, the ALJ did not seize upon isolated or rare instances of activity to discount Plaintiff's subjective complaints, see Marti S. v. Kijakazi, No. 2:22CV400, 2023 WL 8507809, at *13 (E.D. Va. Sept. 5, 2023) (unpublished) ("[The p]laintiff, citing Shelley C., argues the ALJ improperly excluded the context surrounding her trip to Colorado, and specifically erred by ignoring [the treating psychiatrist]'s treatment notes stating[ that she] went to Colorado to obtain cannabinoids to help with her pain and emotional regulation. However, here, the [c]ourt agrees with the Commissioner that the ALJ did not take [the p]laintiff's activities out of context, but highlighted the inconsistencies between [her] reports of frequent, independent travel with [the psychiatrist]'s finding that [the plaintiff] ha[d] extreme limitations in her ability to travel in unfamiliar places or use public transportation. In citing these activities, the ALJ reasonably found that [the psychiatrist]'s opinion was inconsistent with other evidence in record." (internal quotation marks and citations omitted)), recommendation adopted, 2023 WL 8275974 (E.D. Va. Nov. 30, 2023) (unpublished); compare Shawntelle E. v. Kijakazi, No. 3:22CV365, 2023 WL 3485982, at *11 (E.D. Va. Apr. 28, 2023) (unpublished) (remanding case where "ALJ[] reli[ed] on [the p]laintiff's activities of daily living to discredit her subjective statements," but, "like Shelley C., such 'activities were few and far between, as they were discussed in only a handful of [the

34

*plaintiff's] many treatment notes*'" (quoting <u>Shelley C.</u>, 61 F.4th at 362) (emphasis in <u>Shelley C.</u>)), <u>recommendation adopted</u>, 2023 WL 3483895 (E.D. Va. May 16, 2023) (unpublished).

In short, Plaintiff's second and final assignment of error fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, and that this action is **DISMISSED** with prejudice.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

March 25, 2024

35